IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ELAINE BARKER on behalf of herself** <br> **and all others similarly situated,** | § <br> § <br> § | **CIVIL ACTION NO: 4:22-cv-103** |
| **Plaintiff,** | § <br> § | |
| v. | § <br> § | **JURY TRIAL DEMANDED** |
| **ROUND TABLE PHYSICIANS** <br> **GROUP, PLLC,** | § <br> § <br> § <br> § | |
| **Defendant.** | § | |

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

1.   Round Table Physicians Group, PLLC ("Round Table") is a physicians' group that employs doctors to provide medical services.

2.   Frequently, Round Table's patients are persons in need of medical help after being injured in car wrecks.

3.   Unfortunately, Round Table has come up with an illegal scheme to maximize profits on the backs of these injured persons. It does so to the detriment of these injured persons, other law-abiding medical providers, and other interested parties.

4.   For those patients injured in car wrecks, Round Table files illegal "hospital lien" against them, directly contrary to Texas Property Code Chapter 55.

5.   By filing these liens, Round Table is trying to illegally profit off these injured patients and hold their injury claims hostage.

6.   Round Table's illegal liens prevent these patients from negotiating and settling their personal injury claims, creating even more strain on an overworked legal system for those personal injury claims that enter litigation.

1

7. Elaine Barker is one such patient who had the misfortune to be injured in a car wreck and sought treatment at Round Table, ending up with an improper and illegal lien placed by Round Table on her recovery.

8. This Rule 23 class action seeks to recover for Round Table's illegal and improper actions, for Barker and all other similarly affected persons, under the Texas Deceptive Trade Practices Act ("DTPA"), the Texas Business & Commerce Code § 17.41 *et seq.*, and pursuant to Texas Civil Practice & Remedies Code Chapter 12.

## JURISDICTION AND VENUE

9. This Court has original jurisdiction over Barker's claims pursuant to the Class Action Fairness Act found in 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in where there are in excess of 100 class members and some of the class members are citizens of a state different than that of Round Table.

10. Round Table is subject to personal jurisdiction in Texas because it does business in Texas and is a Texas company.

11. Venue is proper in this district under 28 U.S.C. § 1391 because a substantial part of the acts or omissions giving rise the claims in this Complaint took place in this district.

## PARTIES

12. Barker is a resident of Harris County, Texas. During the relevant time period, Round Table filed a purported hospital lien against Barker pursuant to Chapter 55 of the Texas Property Code.

13. Round Table is a domestic professional limited liability company. Round Table may be served with process by serving its registered agent, Flaurent Fotso at 11490 Westheimer Rd., 10th Floor, Houston, TX 77077.

14. The Class Members consist of all individuals who were subject to hospital liens filed by Round Table at any time during the four-year period prior to the filing of this lawsuit to the present.

## COVERAGE

15. At all material times, Round Table has been a "person" as defined under the Texas Business and Commerce Code. Tex. Bus & Com. Code §§ 17.45(3), 17.50(a)(1);

16. At all material times, Round Table has provided services as defined under the Texas Business and Commerce Code. Tex. Bus. & Com. Code § 17.45(2).

17. At all material times, Round Table has provided medical billing services and this case arises from its fraudulent and illegal billing and collection efforts.

## FACTS

18. Round Table is a professional limited liability company that employs and/or provides billing services for physicians. These physicians provide their services at Signature Care Emergency Center, which operates 21 emergency centers throughout Texas. (*See* https://ercare24.com/, last visited January 5, 2022.)

19. If a person seeks medical services at Signature Care Emergency Center, an explanation is provided to the patient as to how billing is processed. The following information is communicated to the patient.

   1. This facility is a freestanding emergency medical care facility;
   2. **This facility charges rates comparable to a hospital emergency room and may charge a facility fee**

3. This facility or a physician providing medical care at the facility may not be a participating provider in the patient's health benefit plan provider network
4. **A physician providing medical care at this facility may bill separately from the facility for the medical care provided to a patient**
5. The facility is not a participating provider in any health benefit plan provider network

(https://ercare24.com/payment-and-billing/, last visited January 5, 2022) (emphasis added).

20. With respect to billing patients, the Signature Care Emergency Center website states:

> SignatureCare Emergency Center has a streamlined billing process. **We work with Round Table Medical Billing for our emergency room billing services**. When you are experiencing a medical emergency, the last thing you need to do is to get frustrated with the insurance and billing process at the emergency room. Our medical billing staff will work closely with you so that you are completely satisfied with every aspect of your experience with us, including the billing procedure.

(https://ercare24.com/payment-and-billing/, last visited January 5, 2022) (emphasis added).

21. It is reiterated that: "**We bill most insurance plans\*, including Workers' Compensation and Medicare.**" (*Id.* (emphasis in original).)

22. Additionally, the website states that patients will receive one bill from Round Table for the "cost of seeing one of our physicians" and a separate bill from Emergency Center, PLLC for the "lab fees, scans and facility charges." (*Id.*)

> Once the insurance company has finalized your claim, you will receive two bills. One bill will be from **Round Table Physicians Group, PLLC** and will cover the cost of seeing one of our physicians during your visit. The other bill will cover any lab fees, scans and facility charges, and it will be from **Emergency Center, PLLC**.

(*Id.*)

4

**Round Table Engaged in Illegal Billing Practices By Filing
"Hospital Liens" Against its Patients**

23. However, with respect to patients that are injured in automobile collisions, Round Table refuses to submit its bill to health insurance providers, Medicare, or Worker's Compensation for payment.

24. The reason is because the amounts paid by insurance, Medicare, or Worker's Compensation are usually very low as these bills are subject to contractual adjustment.

25. The Texas Supreme Court, in *Haygood v. De Escabedo*, 356 S.W.3d 390 (Tex. 2011), explained that a "two-tiered structure" for medical billing rates has emerged given the prevalence of private insurance. The Texas Supreme Court explained as follows:

> A two-tiered structure has evolved: "list" or "full" rates sometimes charged to uninsured patients, but frequently uncollected, and reimbursement rates for patients covered by government and private insurance. We recently observed that "[f]ew patients today ever pay a hospital's full charges, due to the prevalence of Medicare, Medicaid, HMOs, and private insurers who pay discounted rates."

*Id*. at 393.

26. In other words, when medical providers submit their bills to insurance companies for payment, those bills are subject to being contractually adjustment downward under the agreements between the medical providers and the insurance companies. *See id*. at 394.

27. The downward adjustments are typically shown as "adjustments or credits" on the bills. *Id*.

28. These downward adjustments can be substantial, resulting in as much as 90% of the bill being adjusted by the insurance companies.

29. To avoid these downward adjustments in its bills, Round Table concocted an illegal scheme to file "hospital liens" against its patients rather than submit the bills to insurance companies for payment.

30. By not submitting the bills to insurance companies, Round Table avoided the downward adjustments in its bills.

31. Instead, by filing a hospital lien, Round Table is able to make a claim for payment at the "list" or "full" amount of its bills rather than at the lowered rate that would be paid by insurance.

32. By filing the hospital liens, Round Table is able to make a claim for payment far in excess of what Round Table would otherwise receive from the insurance company, thereby substantially increasing Round Table's profits.

33. This "list" or "full" rate charged by medical providers is sometimes known as the "chargemaster rate." The Texas Supreme Court has discussed the ills of medical providers seeking compensation at this inflated rate.

> **Commentators lament the increasingly arbitrary nature of <u>chargemaster prices</u>**, noting that, over time, they have "lost any direct connection to costs or to the amount the hospital actually expect[s] to receive in exchange for its goods and services." George A. Nation III, *Hospital Chargemaster Insanity: Heeling the Healers*, 43 Pepp. L. Rev. 745, 755 (2016) (citing Christopher P. Tompkins et al., *The Precarious Pricing System for Hospital Services*, 25 Health Aff. 45, 48 (2006)). Yet hospitals have incentive to continue raising chargemaster prices because of the positive correlation between those prices and hospital revenue. *Id.* at 755–56; *see also* George A. Nation III, *Determining the Fair and Reasonable Value of Medical Services: The Affordable Care Act, Government Insurers, Private Insurers and Uninsured Patients*, 65 Baylor L. Rev. 425, 454 (2013) ("In one form or another, a hospital's billed (chargemaster) charges are used indirectly to determine the ultimate dollar level of reimbursement payments.").[6] This trend continues notwithstanding the fact that hospitals generally expect to recover far less than they officially "charge." *E.g.*, Tompkins, 25 Health Aff. at 48 ("The gap between charges and actual payments (net patient revenues) now averages about 255 percent and is growing rapidly.").

*In re North Cypress Medical Center Operating Co., Ltd*., 559 S.W.3d 128, 132 (Tex. 2018) (emphasis added).

6

34. Round Table has no legal basis to file a hospital lien against any of its patients and Round Table's act of filing hospital liens is illegal as a matter of law.

### Round Table is Not Permitted to File a Lien Under Chapter 55 of the Texas Property Code

35. Texas's hospital-lien statute is codified in Chapter 55 of the Texas Property Code. *See* Tex. Prop. Code, Ch. 55. Under this statute, two liens can be filed: (1) a hospital lien, and (2) an emergency medical services provider lien. *See* Tex. Prop. Code § 55.002.

36. Round Table is not a hospital and has no legal right to file a hospital lien. Round Table is a physicians group employing doctors. Section 55.004(c) specifies that physicians may not file their own lien and there is no such thing as a "Physician's lien." *See* Tex. Prop. Code § 55.004(c).

37. Round Table's act of filing a <u>hospital lien</u> is illegal as a matter of law.

38. Round Table apparently agrees that it is not an "emergency medical services provider" as it has not filed an emergency medical services provider lien.

39. Had Round Table filed an emergency medical services provider lien, Round Table's conduct would have been illegal anyway because Round Table is not an "emergency medical services provider." *See* Tex. Health & Safety Code § 773.003.[1]

40. Therefore, Round Table is not permitted to file an emergency medical services provider lien.

---

[1] Moreover, an emergency medical service provider lien can only be filed in counties with populations of less than 800,000. *See* Tex. Prop. Code § 55.002(c).

**Round Table Has Been Repeatedly Sued for Filing
Illegal Hospital Liens Against its Patients**

41. This is not the first case to challenge Round Table's illegal act of filing hospital liens against its patients. In fact, Round Table has already been sued numerous times for filing illegal hospital liens. *See Round Table Physicians Group, PLLC v. Medina*, 609 S.W.3d 299 (Tex. App.—Houston [14th Dist.] Aug. 25, 2020, pet. denied); *Round Table Physicians Group, PLLC v. Kilgore*, 607 S.W.3d 878 (Tex. App.—Houston [14th Dist.] Aug. 25, 2020, pet. denied); *Sanders v. Bansal*, No. Civ. A. 01-18-00508, 2019 WL 7341660 (Tex. App.—Houston [1st Dist.] Dec. 31, 2019, pet. denied).

42. Despite these other cases, Round Table has persisted in filing hospital liens even though it is not a hospital.

43. The reason is because a hospital lien provides a method to secure payment at inflated rates from auto wreck victims. See *McAllen Hosps., L.P. v. State Farm Cty. Mut. Ins. Co. of Tex.*, 433 S.W.3d 535, 537 (Tex. 2014). A hospital lien places a lien on the cause of action of a patient "who receives hospital services for injuries caused by an auto wreck that is attributed to the negligence of another person." Tex. Prop. Code § 55.002(a) ). The lien also attaches to the proceeds of a settlement of the patient's cause of action. Tex. Prop. Code § 55.003(a)(3). Therefore, payment cannot be made to the patient from a settlement of the patient's cause of action without satisfying the hospital lien. By filing a hospital lien, Round Table can effectively freeze the funds from a personal injury settlement and hold the patient hostage until payment at the inflated rates charged by Round Table is made.

### **Round Table Filed an Illegal Hospital Lien Against Barker**

44. On May 5, 2018, Barker was involved in an automobile collision in Houston, Texas. That same day, she received medical treatment for her injuries at Signature Care Emergency Center.

45. At Signature Care Emergency Center, she was treated by a physician employed by or billing through Round Table. Despite being sued numerous times for filing illegal hospital liens against its patients and being placed on notice that Round Table is not permitted to do so, Round Table filed a hospital lien against Barker. Exhibit A is copy of the hospital lien filed against Barker.

46. The Harris County Clerk's Office identifies the liens that were filed against Barker. No lien was filed by Signature Care Emergency Center. Instead, Round Table filed its illegal lien for the physician charges.

47. Barker has an existing personal injury lawsuit that was filed in Harris County District Court. That case is *Barker v. Tejada, et al.*, Cause No. 2020-05333 pending in the 234th Judicial District Court of Harris County. By filing a lien, Round Table has unlawfully and illegally encumbered Barker's lawsuit.

### **Round Table's Actions Have Harmed Barker and the Class Members**

48. Round Table's conduct has harmed Barker and the Class Members.

49. First, Round Table has encumbered Barker's property – her lawsuit in Harris County District Court.

50. Second, by filing a lien, Barker's ability to resolve her lawsuit and claim possession of the amounts due to her have been restricted.

9

51. Third, by filing a lien, Round Table has sought (and taken in the past) more money that what it is entitled under the law.

52. Fourth, by filing a lien, Round Table is able to make a claim for payment indefinitely.

53. Under Texas law, the statute of limitations is four years to file a lawsuit for an unpaid bill.

54. By filing a lien, Round Table is able to make a claim for payment well after the statute of limitations has run and well after the legal right to receive payment has expired.

55. Round Table's conduct has similarly harmed the Class Members. Like Barker, Round Table has filed illegal hospital liens against the Class Members. Like Barker, the Class Members have been harmed by Round Table's illegal actions.

56. Round Table's act of filing the hospital liens against Barker and the Class Members was done knowingly and willfully. Round Table knew that it was not entitled to file hospital liens. Yet, Round Table ignored the law nevertheless.

## COUNT I

Violation of Tex. Civ. Prac. & Rem. Code §§ 12.001 et. seq
Fraudulent Lien Statute
(On Behalf of Barker and the Class Members)

57. Barker repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

58. Barker brings this claim on behalf of herself and on behalf of the Class Members.

59. Chapter 12 of the Texas Civil Practice & Remedies Code renders it illegal for any person to make, present, or use a document or other record with: (1) knowledge that the document is a fraudulent lien or claim against personal property, (2) intent that the document be given the

10

same legal effect as a court record evidencing a valid lien or claim against personal property, and (3) intent to cause financial injury, mental anguish, or emotional distress.

60. In this case, Round Table filed a hospital lien against Barker with full knowledge that it is not a hospital and not permitted to file a hospital lien. Round Table knew that filing a hospital lien against Barker was fraudulent.

61. Barker's personal injury cause of action is personal property under Texas law. *See Valero Eastex Pipeline Co. v. Jarvis*, 990 S.W.2d 852, 855 (Tex. App.—Tyler 1999, pet. denied) (stating "the general rule in Texas is that a cause of action is a property right."); *Carney v. Tex. Prop. and Cas. Ins. Guar. Ass'n*, 354 S.W.3d 843, 849 (Tex. App.—Austin 2011, pet. denied) (noting that "the general rule is that the right to sue for money damages is a chose in action, which is a property right."); *Gutierrez v. Elizondo*, 139 S.W.3d 768, 774 (Tex. App.—Corpus Christi 2004, no pet.) (noting that "a cause of action is a property right.")

62. Round Table intended that the hospital lien it filed against Barker be given the same legal effect as a valid lien.

63. Round Table intended to cause financial harm to Barker by forcing her to pay more money than what Round Table is entitled under the law.

64. Tex. Civ. Prac. & Rem. Code § 12.002(b) provides that Round Table is liable for the greater of actual damages or $10,000, court costs, reasonable attorney's fees, and exemplary damages.

## **COUNT II**

Declaratory Judgment
28 U.S.C. § 2202
(On Behalf of Barker and the Class Members)

11

65. Barker repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

66. Barker brings this claim on behalf of herself and on behalf of the Class Members.

67. Barker seeks a judicial declaration that the hospital liens filed by Round Table against Barker and the Class Members are illegal and unenforceable. 28 U.S.C. § 2202 authorizes a declaratory judgment to be brought to adjudge and resolve the rights of the Parties. Specifically, section 2202 states: "a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

68. Barker seeks a declaratory judgment that any and all hospital liens filed by Round Table are invalid and unenforceable for Barker and the Class Members.

69. Barker is entitled to reasonable attorney's fees and costs for bringing this action.

## COUNT III

Violation of Tex. Bus. & Com. Code §§ 17.41 et. seq
Texas Deceptive Trade Practices Act
(On Behalf of Barker and the Class Members)

70. Barker repeats and re-alleges the allegations contained in the paragraphs above as if fully set forth herein.

71. Barker brings this claim on behalf of herself and on behalf of the Class Members.

72. This cause of action is brought pursuant to the Texas Deceptive Trade Practices-Consumer Protection Act, as codified in the Texas Business & Commerce Code §§ 17.41 *et. seq*. ("DTPA").

73. Barker is a consumer as defined by the Tex. Bus. & Com. Code § 17.45(4).

74. Barker sought or acquired by services from Round Table. *See* Tex. Bus. & Com. Code § 17.45(2).

75. Round Table's illegal actions include, but are not limited to the following:

   1. Round Table represented it has a valid hospital lien when it does not;

   2. Round Table represented that it would submit bills for services to insurance providers when its policy was to not do so;

   3. Round Table filed a hospital lien knowing that it was not entitled to do so;

   4. Round Table failed to disclose that any person who arrives for treatment following an auto collision will be subject to a hospital lien filed by Round Table.

76. But for Round Table engaging in the false, misleading, and deceptive acts, as identified in this Complaint, Barker and the Class Members would not have suffered the harm they experienced. As a result of Round Table's illegal conduct, Barker and the Class Members have suffered injury/economic loss and are entitled to treble economic losses because Round Tables acted intentionally.

77. Barker and Class Members also seek reasonable attorney's fees, expenses, and court costs.

## CLASS ALLEGATIONS

78. Barker brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b) on behalf of themselves and on behalf of the following Class:

> **All individuals who were subject to hospital liens filed by Round Table at any time during the four-year period prior to the filing of this lawsuit to the present.**

79. **Numerosity**. The members of the Class are so numerous that joinder of all members of the Class is impracticable. Barker is informed and believes that the proposed Class contain nearly 1,000 people who have been harmed by Round Table's conduct as alleged herein.

80. **Existence and Predominance of Common Questions of Law and Fact**: This action involves common questions of law and fact, which predominate over any questions affecting individual Class Members. These common legal and factual questions include, but are not limited to, the following:

    (a) whether Round Table is entitled to file a hospital lien under Chapter 55 of the Texas Property Code;

    (b) Whether Round Table's conduct was intentional; and

    (c) Whether Round Table knew that it was not entitled to file a hospital lien.

81. **Typicality**. Barker's claims are typical of the claims of the members of the Class because all Class Members were injured through the uniform misconduct described above and were all subject to Round Table's illegal act of filing hospital liens. Barker is also advancing the same claims and legal theories on behalf of the Class.

82. **Adequacy of Representation**. Barker will fairly and adequately protect the interests of the members of the Class. Barker has retained counsel experienced in complex class action litigation, and Barker intends to prosecute this action vigorously. Barker has no adverse or antagonistic interests to those of the Class.

83. **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Round Table. It would thus be virtually impossible for members of the Class, on an individual basis, to obtain effective redress for the wrongs done to them. Furthermore, even if Class Members could afford such individualized litigation, it would place a tremendous strain on judicial economy. Individualized litigation would

create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no unusual management difficulties under the circumstances here.

84. Indeed, by concentrating this litigation in one forum, judicial economy and parity among the claims of individual Class Members are promoted. Additionally, class treatment in this matter will provide for judicial consistency. Notice of the pendency and any resolution of this action can be provided to the Class Members by mail, electronic mail, text message, print, broadcast, internet and/or multimedia publication. The identity of members of the Class Members is readily identifiable from Round Table's records.

85. This type of case is well-suited for class action treatment because: (1) Round Table's practices and policy of filing hospital liens were uniform; (2) this case present a common legal issue that is susceptible to class wide resolution – namely, whether Round Table is permitted to file a hospital lien; (3) the necessary records to prove Round Table's illegal conduct are in the possession of Round Table. Ultimately, a class action is a superior form to resolve the claims detailed herein because of the common nucleus of operative facts centered on Round Table's filing of hospital liens.

86. Unless a class is certified, Round Table will retain the money it wrongfully received as a result of its illegal conduct. Round Table has acted and refused to act on grounds generally applicable to all Class Members, making a class action a superior means to resolve this case.

## JURY DEMAND

87.     Barker hereby demands trial by jury on all issues.

## PRAYER

88.     For these reasons, Barker prays for:

   a. An order certifying the Class under Rule 23;

   b. A judgment against Round Table awarding Barker and the Class Members their economic losses, treble damages, and all statutory penalties;

   c. An order awarding attorneys' fees, costs, and expenses;

   d. Pre- and post-judgment interest at the highest applicable rates; and

   e. Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

HODGES & FOTY, L.L.P.

By: _/s/ Don Foty_____
Don J. Foty
Texas Bar No. 24050022
S.D. Texas # 711552
4409 Montrose Blvd, Suite 200
Houston, TX 77006
Telephone: (713) 523-0001
Facsimile: (713) 523-1116
dfoty@hftrialfirm.com

AND

PARMET PC

By: _/s/ Matthew S. Parmet_____
Matthew S. Parmet
Texas Bar # 24069719
S.D. Texas # 1076547
3 Riverway, Ste. 1910
Houston, Texas 77056
Telephone: (713) 999-5228
matt@parmet.law